IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

METROPOLITAN TITLE
AGENCY, INC., et al.,

    Plaintiffs,

v.

FEDERAL EXPRESS
CORP.,

    Defendant.

Case No. 3:22-cv-94

Judge Walter H. Rice

---

DECISION AND ENTRY SUSTAINING DEFENDANT FEDERAL EXPRESS
CORPORATION'S MOTION FOR SUMMARY JUDGMENT (DOC. #32); PLAINTIFFS,
METROPOLITAN TITLE AGENCY, INC., AND MID AMERICA LAND TITLE AGENCY,
INC.'S REMAINING CLAIMS FROM FIRST AMENDED COMPLAINT (DOC. #4) ARE
DISMISSED WITH PREJUDICE; JUDGMENT SHALL ENTER IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY

---

Plaintiffs' Metropolitan Title Agency, Inc. ("Metropolitan") and Mid America Land Title Agency, Inc. ("Mid America"), collectively d/b/a M+M Title Co. ("M+M Title") sued Defendant Federal Express Corporation ("FedEx"), raising, in relevant part here, claims for breach of contract and conversion. (First Am. Compl., Doc. #4). Defendant has filed a Motion for Summary Judgment. (Motion, Doc. #32). For the reasons set forth below, the Motion is SUSTAINED.

I. **Factual Background**

The facts with respect to the Motion are presented in the light most favorable to Plaintiffs as the non-movants. In the late 1990s, "Metropolitan Title, through their

underwriter Stewart Title Guaranty, established their account for discounted shipping services with FedEx." (Memo. in Opp., Doc. #48, PAGEID 575, citing A. Taylor Depo., Doc. #43, PAGEID 473, 489, 491). After Mid America discovered that it was not getting discounted shipping, "[t]he entities contacted a FedEx representative[,] who established a separate account between FedEx and Mid America using the same discount pricing structure that was applied to Metropolitan Title account." Metropolitan and Mid America began co-branding and doing business as M+M Title in 2007, but they remain separate entities with separate places of business. Importantly, even after 2007, they retained separate accounts with FedEx. (*Id.* at PAGEID 575-76, citing Doc. #43, PAGEID 458, 464, 473-74, 494). However, "[u]p until July of 2021, M+M Title believed that both of their accounts were linked to affiliated agent, Stewart Title Guaranty's[,] FedEx account." (*Id.* at PAGEID 576, citing Doc. #43, PAGED 486-87).

At all relevant times, Plaintiffs placed shipment orders through the FedEx Ship Manager Application. (Doc. #32, PAGEID 192, citing Garrett Decl., Doc. #32-5, PAGEID 240-41, ¶¶ 3-4). Each time, before a shipment could be ordered through the application, a pop-up appeared, stating that by clicking "Ship/Continue" and creating an airbill, Plaintiffs were agreeing to the FedEx Ship Manager Terms of Use and the FedEx Express Terms and Conditions ("Service Guide"). (Doc. #32-5, PAGEID 241-42, ¶ 4). In the Service Guide, there was a section titled "Invoice Adjustments/Overcharges" ("overcharge provision"), which stated that: "Requests for invoice adjustments due to an overcharge must be received within 60 days after the original invoice date. . . . [Defendant] will not be liable for any invoice adjustment unless you comply with the notice requirements described above." (C. Dickey Decl., Ex. A, Doc. #32-1, PAGEID

2

204, ¶ 7, quoting Doc. #32-1, PAGEID 210). The terms also contained a section entitled "Limitations on Legal Actions" ("limitation on actions provision"), which provided that any action for "damages, refunds, credits, recovery of reliance interests, disgorgement, restitution, injunctive relief, declaratory relief or any other legal or equitable relief" must be brought "within one year from the date of delivery of the shipment or from the date on which the shipment should have been delivered." (*Id.* at PAGEID 204, 215, ¶ 8). Plaintiffs do not dispute that they had to agree to the Service Guide terms each time they created an airbill.

Beginning in October 2019, Metropolitan stopped receiving discounted pricing from Defendant. Defendant states that it stopped providing discounts because Metropolitan's account was linked with MetLife Services and Solutions, LLC ("MetLife"), and MetLife had informed Defendant that it wanted to de-link Metropolitan from its account. (J. Ricketts Decl., Doc. #32-3, PAGEID 237). Neither Defendant nor MetLife informed Metropolitan of the de-linking. Mid America and Stewart Guaranty continued to receive discounted rates. (A. Taylor Depo., Doc. #43, PAGEID 487-89).

Plaintiffs contracted bookkeeping and accounts payable duties for both Metropolitan and Mid America to a Jean Pegg. Pegg paid invoices by mail as they came due, but communicated very little with Anne Taylor, M+M Title President, or anyone else at M+M Title, particularly after the COVID-19 pandemic began in earnest in March 2020. (Doc. #43, PAGEID 469-71, 484, 510, 518). Nobody at M+M Title was aware that Metropolitan was paying higher shipping rates than Mid America until July 2021, when Taylor reviewed a Metropolitan invoice and realized that discounts were not being applied. (*Id.* at PAGEID 496-97). Taylor spoke to Jimmy Charles, M+M Title's

3

FedEx account representative, who, after researching the issue, "represented to Anne Taylor that the discounts associated with this [Metropolitan] account began reducing in October of 2019 and then terminated completely in early 2020." (Memo. in Opp., Doc. #48, PAGEID 578, citing Doc. #43, PAGEID 497-98, 511-13). Charles told Taylor that FedEx would: (1) reinstate Metropolitan's discount; (2) rerate every overbilled shipment; and (3) refund M+M Title all overpayments. (*Id.*, citing J. Charles Depo., Doc. #40, PAGEID 310; Doc. #43, PAGEID 520-21, 536; Aug. 19, 2021, Corr., Doc. #48-1, PAGEID 592). While Charles and his supervisor Andrea Rini were able to reinstate the discount and refund the overpayments made beginning January 1, 2021, they were unable to provide refunds for the 2019 and 2020 overcharges. (Doc. #40, PAGEID 289, 291-93, 296, 299-301, 303; A. Rini Depo., Doc. #42, PAGEID 426, 431-33). On an October 7, 2021, call among Taylor, Charles, and Rini, Taylor was informed that Defendant would not be reimbursing for 2019 and 2020 overbilling; Defendant's refusal was confirmed in an October 21, 2021, email. (Doc. #43, PAGEID 531-32; Oct. 21, 2021, Corr., Doc. #48-4, PAGEID 596-97).

## II. Procedural History

On March 29, 2022, Plaintiffs filed suit in the Montgomery County, Ohio, Court of Common Pleas, alleging breach of contract (Claim One), unjust enrichment (Claim Two), and conversion (Claim Three). (Summons, Doc. #1-1; Complaint, Doc. #3). Defendant removed the case to this Court on April 11, 2022 (Notice, Doc. #1), and on April 20, 2022, Plaintiffs filed a First Amended Complaint, raising the same three claims. (Doc. #4). On April 25, 2022, Defendant moved to dismiss the entire First Amended Complaint under Rule 12(b)(6). (Motion, Doc. #5, PAGEID 33-34). On March 22, 2023,

4

the Court sustained in part and overruled in part the motion, allowing the breach of contract and conversion claims to proceed but dismissing without prejudice the unjust enrichment claim subject to filing a second amended complaint within fourteen (14) days of entry. (Entry, Doc. #18, PAGEID 142). No further amended complaint was filed, meaning that Claim Two is DISMISSED WITH PREJUDICE.

Defendant, anticipating the filing of a newly-amended complaint, did not answer the First Amended Complaint by April 5, 2023, as it was required to do. FED.R.CIV.P. 12(a)(4)(A). However, discovery proceeded as normal, and Plaintiffs never indicated to the Court or to Defendant that a responsive pleading had not been filed. On September 28, 2023, Defendant filed the instant Motion on the remaining claims. (Doc. #32). After receiving an extension of time to respond to the Motion (Order, Doc. #38, citing Motion Doc. #37), on November 17, 2023, Plaintiffs filed a Motion for Default Judgment, on the grounds that Defendant never answered the First Amended Complaint. (Doc. #44). Defendant answered the First Amended Complaint that day, raising seven affirmative defenses, including that "M+M Title's claims are barred by the one-year contractual statute of limitations[,]" and that "Plaintiff's claims and damages, if any, are barred or limited by the terms in the contract of carriage, which Plaintiff agreed to when it tendered the shipment. Terms precluding Plaintiff's recovery include that FedEx Express is not responsible when a shipper fails to timely request an invoice adjustment." (Answer, Doc. #45, PAGEID 562). Plaintiffs subsequently filed a Motion to Strike Defendant's Answer (Doc. #47). Both the Motion for Default Judgment and Motion to Strike were denied via Notation Orders on November 22, 2023, making Defendant's Answer (Doc. #45) an effective pleading in response to the First Amended Complaint.

Meanwhile, Plaintiffs filed their memorandum *contra* Defendant's Motion on November 20, 2023 (Doc. #48), and Defendant replied on December 8, 2023. (Doc. #55).

## III. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings," and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence

must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. FED.R.CIV.P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, the court may also consider other properly presented materials in the record. FED.R.CIV.P. 56(c)(3).

## IV. Analysis

### A. Answer and Affirmative Defenses

Plaintiffs argue that because Defendant failed to file an answer to the First Amended Complaint prior to filing the Motion, "even if this Court approves FedEx's answering out of time, . . . the admissions, denials, and/or affirmative defenses contained therein should not be considered for purposes of determining whether FedEx

7

is entitled to summary judgment." (Doc. #48, PAGEID 574). In support, they note the principle that "failure to plead an affirmative defense . . . results in the waiver of that defense and its exclusion from the case." (*Id.* at PAGEID 580 (internal quotations marks omitted), quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1278 (4th ed. 2023)). They also cite a United States Court of Appeals case from the Sixth Circuit in arguing that allowing Defendant "to raise any affirmative defenses for the first time in its motion for summary judgment, as it attempts to do here, would violate Rule 8(c) of the Federal Rules and would unfairly prejudice M+M Title." (*Id.* at PAGEID 580-81, citing *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 824 (6th Cir. 1990)). However, Plaintiffs ignore a more recent Sixth Circuit case referenced in the very Wright and Miller section they cited. In *Rogers v. Internal Rev. Serv.*, the Court declined to establish a hardline rule and instead held that:

> Whether or not a court will find prejudice depends in large part on the amount of time a party had to bring the affirmative defense and its reason for not doing so earlier . . . where there is unfair prejudice, a party is taken by surprise, or unnecessary delay, the general waiver rule applies; on the other hand, where there is no unfair prejudice, surprise, or delay, the general waiver rule is left to the district court's discretion.

822 F.3d 854, 864-65 (6th Cir. 2016). The *Rogers* Court noted that in *Macurdy*, the defendant waiting nearly a year to file any type of answer to the complaint and nineteen months after the filing of the complaint to raise an affirmative defense was sufficient to establish prejudice. *Id.*, citing *Macurdy*, 894 F.2d at 824. In contrast, Defendant herein moved to dismiss the First Amended Complaint only five days after that complaint was filed, and fully participated in discovery. (*See, e.g.*, Aug. 24, 2022, Notice of Disc. Resp., Doc. #9; Mar. 1, 2023, Joint Motion for Protective Order, Doc. #15). The Court's Decision and Entry overruling in part the Motion to Dismiss expressly contemplated

8

Plaintiffs filing a new complaint. (Doc. #18, PAGEID 142). That Defendant did not answer the First Amended Complaint in anticipation of a superseding pleading being filed (Am. Motion, Doc. #52, PAGEID 615, ¶ 6), was undoubtedly a mistake. However, Defendant's inaction was not unreasonable, and certainly was not inexcusable neglect.

Most importantly, Plaintiffs were not prejudiced by Defendant's failure to raise affirmative defenses. As Defendant notes, and Plaintiffs do not dispute, the parties exchanged mediation statements in June 2023, in which Defendant made Plaintiffs aware of its position that Plaintiffs' claims were time-barred. (Doc. #52, PAGEID 615, ¶ 5). In September 2023, Defendant filed its Motion, based in part on an argument that the Service Guide contained binding time limits to which Plaintiffs did not adhere. (Doc. #32, PAGEID 196-200). On October 23, 2023, Plaintiffs' counsel expressly questioned Charles on the temporal limitations set forth in the Service Guide. (Doc. #40, PAGEID 332-33). Plaintiffs had ample opportunity to address the limitations arguments in their memorandum *contra*, and they did. (Doc. #48, PAGEID 586-87). Even in their Motions for Default Judgment (Docs. #44, #46) and to Strike Defendant's Answer (Doc. #47), Plaintiffs did not claim surprise; nor could they reasonably so claim.

It was for these above reasons that, via Notation Orders on November 22, 2023, the Court overruled Plaintiffs' Motions and deemed Defendant's Answer timely filed. Given that "the Federal Rules of Civil Procedure evidence a clear preference to resolve disputes on their merits[,]" *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 406 n.4 (6th Cir. 2019) (internal quotation marks and citation omitted), the Court stands by its previous decisions and will consider Defendant's contractual limitations defenses.

9

### B. Claim One: Breach of Contract

Defendant argues that summary judgment on the breach of contract claim is appropriate for two reasons. *First*, Plaintiffs had no contractual right to receive the discounts. *Second*, even if they did, the contracts between Defendant and Plaintiffs contained a time limit for Plaintiffs to request a refund and a statute of limitations as to when they could file suit, and Plaintiffs' failures to abide by either of those mean that they are barred from recovery. (Doc. #32, PAGEID 196-98, 200). As the second argument is dispositive, the Court does not analyze the "no contractual right" argument. Rather, solely for this Motion, the Court assumes *arguendo* that: Plaintiffs had contractual rights to the discounted rates, and Defendant actually overcharged them.

Defendant notes that the Service Guide requires a purchaser to dispute any alleged overcharges within sixty days of the original invoice date. (Doc. #32, PAGEID 196-97, quoting Doc. #32-1, PAGEID 204, ¶¶ 7-8; citing Doc. #32-1 PAGEID 210, 215). Despite Plaintiffs being overbilled from October 2019 through December 2020, Plaintiffs did not attempt to seek a refund or adjust the amount owed until July 2021, far outside the sixty-day window. (*Id.* at PAGEID 196, citing Doc. #4, PAGEID 28, ¶ 11). As courts have consistently concluded that Defendant's Service Guide is a binding contract against customers that, like Plaintiff, agreed to those terms by creating an airbill, Defendant asks that the terms be enforced against Plaintiffs here. (*Id.* at PAGEID 197, citing *On the House Syndication, Inc. v. Fed. Express Corp.*, 79 F. App'x 247, 249 (9th Cir. 2003); *Aretakis v. Fed. Express Corp.*, No. 10-1696, 2011 WL 1226278, *5 (S.D.N.Y. Feb. 28, 2011), *report and recommendations adopted at* 2011 WL 1197596

10

(S.D.N.Y. Mar. 25, 2011); *Soto v. FedEx Express Corp.*, No. 09-365, 2009 WL 2146600, *2 (S.D.N.Y. Jul. 17, 2009)).

Moreover, Defendant notes, the Service Guide's limitation of actions provision required any lawsuit or other legal claim regarding alleged overcharges to be brought within one year of the date of delivery or when the shipment was supposed to arrive. As the last non-discounted shipment was delivered no later than December 30, 2020, Plaintiffs were required to sue no later than December 30, 2021. However, they did not file suit until March 29, 2022. (Doc. #32, PAGEID 200, citing Doc. #1-1, PAGEID 4; Doc.# 32-1, PAGEID 204, ¶ 8; C. Gibney Decl., Doc. #32-2, PAGEID 236, ¶ 2). Defendant notes that courts routinely enforce contractual provisions that shorten statutes of limitations, including the limitation on actions provision in the FedEx Service Guide. It argues that there is no factor weighing against doing so here. (*Id.* at PAGEID 200-01, citing *Order of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586 (1947); *Blanco v. Fed. Express Corp.*, 741 F. App'x 587 (10th Cir. 2018); *Samtech Corp. v. Fed. Express Corp.*, No. H-03-0024, 2004 U.S. Dist. LEXIS 27123, at *35 (S.D. Tex. May 28, 2004), *reconsideration denied at* 2004 U.S. Dist. LEXIS 27132 (S.D. Tex. Dec. 5, 2004); *Universal Windows & Doors v. Eagle Window & Door*, 116 Ohio App. 3d 692, 696 (1st Dist. 1996)). Consequently, Defendants assert, whether under the overcharge provision or limitations on actions provision, Claim One is not viable.

Plaintiffs argue that, for two reasons, the Court may enforce neither the overcharge provision nor the limitation on actions provision. *First*, they assert that Defendant waived these defenses by not asserting them in a timely answer. (Doc. #48, PAGEID 582). For the reasons set forth above, the Court has deemed the defenses

11

timely and properly raised, and will not analyze this argument further. *Second*, they claim that Defendant's decision to refund the alleged overpayments for calendar year 2021 in July of that year constituted a waiver of the overcharge provision as to all overcharges. (*Id.* at 586-87, citing *Globe Metallurgical, Inc. v. Hewlett-Packard Co.*, 953 F. Supp. 876, 882 (S.D. Ohio 1996) (Kinneary, J.); Doc. #40, PAGEID 327-328; Doc. #42, PAGEID 439-40; Doc. #43, PAGEID 531-32).

Defendant rejoins that its one-time rebate to Plaintiff, *i.e.*, refunding the 2021 overcharges despite Plaintiff not complying with the overcharge provision, was not a waiver of that provision with respect to any other alleged overcharges for which adjustment was not timely requested. Thus, Defendant claims, there was no express waiver. Defendant further asserts that it made no implied waiver because, under Ohio law, such waiver is found only when a party to the contract has been "prejudicially misled or lulled into believing strict compliance is not required." (Doc. #55, PAGEID 631-32 (internal quotation marks omitted), quoting *Globe Metallurgical*, 953 F. Supp. at 881-82). Defendant argues that Plaintiffs could not have been misled because, in the same conversation in which Plaintiffs' President first became aware of the sixty-day deadline in the overcharge provision, Defendant's representative unambiguously stated that there would be no rebates from invoices dated prior to January 1, 2021. (Doc. #55, PAGEID 632, citing Doc. #43, PAGEID 519-20, 526-27). "None of the 2019 or 2020 damages, which are the entire damages sought, resulted from conduct that occurred after FedEx adjusted invoices that were more than 60 days old, so none of the harm could have arisen from any prejudicial misunderstanding arising out of the partial refund." (*Id.*). Also, Defendant notes that the Service Guide has a non-waiver

12

provision, stating that Defendant's one-off decision not to enforce strictly a particular provision "does not constitute a waiver of that term, condition or provision and does not otherwise impair our right to enforce such term, condition or provision[,]" and argues that this provision should be enforced here. (*Id.* at PAGEID 633, quoting Doc. #32-1, PAGEID 207; citing *Pearle Vision, Inc. v. Adler*, No. 1:07-cv-321, 2008 WL 2704407, at *5 (S.D. Ohio Jul. 3, 2008) (Dlott, J.)).

In support of its argument that the overcharge provision is valid and enforceable (Doc. #48, PAGEID 586-87), Defendant has designated both the Service Guide's non-waiver provision and evidence of the conversations surrounding the rebates of the 2021 charges, wherein, as discussed above, Defendant's representatives stated that Defendant would not give rebates for the 2019 and 2020 years. (Doc. #55, PAGEID 632, citing Doc. #43, PAGEID 519-20, 526-27). Plaintiffs, meanwhile, failed to put forth any evidence that Defendant expressed intent to alter or waive enforcement of the overcharge provision. Thus, there was no express waiver of the overcharge provision.

Moreover, as Defendant states, Plaintiffs were unaware of the sixty-day limit in overcharge provision until July 2021 at the earliest. (Doc. #43, PAGEID 519-20). Thus, there was no "prejudicial misleading" of Plaintiffs by Defendant (*i.e.*, detrimental reliance by Plaintiffs on a promise by Defendant), since Plaintiffs were unaware of the overcharge provision even existing until it could no longer seek refund under it. Also, there is no evidence Defendant ever intended the rebates for 2021 overcharges to be an agreement not to enforce the overcharge provision at all. Thus, Defendant never made an implied waiver. In the absence of any waiver, the sixty-day overcharge

13

provision remains valid and enforceable against Plaintiffs.[1] As it is undisputed that Plaintiffs did not seek a refund until well past the sixty-day deadline of March 1, 2021, for any overcharge from 2019 or 2020, their breach of contract claim is barred by their failure to provide timely notice pursuant to the overcharge provision.

Moreover, even if the overcharge provision were not enforceable, the Service Guide's limitation on actions provision would still bar Plaintiffs' claim. Plaintiffs seek to recover for alleged overcharges that were billed no later than December 31, 2020. Yet under the limitation on actions provision, which Plaintiffs do not claim was waived, "any cause of action . . . *shall be extinguished* unless you file an action within one year from the date of delivery of the shipment or from the date on which the shipment should have been delivered." (Doc. #32, PAGEID 215 (emphasis added)). Thus, irrespective of the notice requirement in the overcharge provision, Plaintiffs needed to file suit no later than December 31, 2021, to recover in court as to any perceived overcharge. Yet, Plaintiffs did not do so until March 29, 2022. (Doc. #1-1, PAGEID 4). Plaintiffs offer no reason to excuse their untimely filing; nor do they argue that Defendant is estopped from enforcing the limitation on actions provision. Consequently, under either the overcharge or limitation on actions provision, Plaintiffs' breach of contract claim (Claim One) is time-barred and must be dismissed.

---

[1] There is also no equitable or public policy reason against enforcement of the Service Guide. The Sixth Circuit has enforced the terms of the Service Guide as against a business customer, *Headstream Tech., LLC v. FedEx Corp.*, No. 22-1410, 2023 WL 1434054, *4 (6th Cir. Feb. 1, 2023), and as Defendant notes, federal courts have even enforced the Service Guide against a *pro se* plaintiff. (Doc. #32, PAGEID 197, citing *Soto*, 2009 WL 2146600, at *2). Here, Plaintiffs are sophisticated business entities, and their President is an attorney who has reviewed and revised "hundreds" of contracts. (Doc. #43, PAGEID 527-28).

14

### C. Claim Three: Conversion

Under Ohio law, "[t]he elements of a conversion claim are: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996) (Graham, J.), citing *Haul Transport of Va., Inc. v. Morgan*, 2d Dist. Montgomery No. CA 14859, 1995 WL 328995, *3 (Jun. 2, 1995). Defendant argues that, for two reasons, Plaintiffs' conversion claim is not viable. *First*, Defendant claims that Plaintiffs never had an ownership right to the discounted rates, and even if they did, the Service Guide's overcharge provision vitiated that right when Plaintiffs failed to seek timely adjustment. (Doc. #32, PAGEID 198-99, quoting *Pac. Space Design Corp. v. PNC Equip. Fin., LLC,* No. 1:13-cv-460, 2014 WL 6603288, at *16 (S.D. Ohio Nov. 19, 2014) (Dlott, J.); citing Doc. #4, PAGEID 30-31, ¶¶ 34-35). *Second*, Defendant asserts that, under Ohio law, money cannot be the subject of a conversion claim unless it is specifically identified as property "and there is an obligation to deliver the specific money in question." "Specific money" does not mean "certain sum," but rather, "specifically identified, segregated, or earmarked funds[.]" (*Id.* at PAGEID 199, quoting *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012) (Smith, J.) (internal quotation marks and citation omitted); *Haul Transport*, 1995 WL 328995, at *4 (Jun. 2, 1995); *Goodwin v. Am. Marine Express, Inc.*, No. 1:18-cv-1014, 2021 WL 848948, at *27 (N.D. Mar. 5, 2021)).

Plaintiffs argue that their conversion claim is viable because here, unlike in *Pac. Space*, Defendant violated the terms of its agreement with Plaintiff and has wrongfully

15

retained the proceeds from the alleged overcharging. (Doc. #48, PAGEID 588-89).

Further, Plaintiffs claim that the monies *were* specifically identified:

> FedEx has already conceded through its actions that M+M Title was improperly overbilled. FedEx's attempts to pick and choose which funds to return and which to improperly withhold is not sufficient to shield them from a claim for conversion. Moreover, from the outset of this litigation, M+M Title has consistently claimed that FedEx is specifically withholding $84,524.29 in funds that rightfully belong to M+M Title.

(*Id.* at PAGEID 590).

Plaintiffs' claim fails for at least two reasons. *First*, under Ohio law, "a tort claim is not viable in the absence of an independent duty outside the contract or where the tort damages are the same as would lie for breach of contract." *Dayton Children's Hosp. v. Garrett Day, LLC*, 2019-Ohio-4875, 149 N.E.3d 1004, ¶ 124 (2d Dist.). Plaintiffs concede that the damages are the same under conversion as they are for breach of contract. Plaintiffs also have not designated evidence of what extra-contractual duty Defendant might have owed them. *Second*, as Defendant correctly notes (Doc. #32, PAGEID 199), Plaintiffs misapprehend Ohio law:

> In order to maintain an action for conversion of money, the plaintiff must establish that the funds were "earmarked," that is, that the defendant had an obligation to deliver a *specific corpus* of money capable of identification and not merely that the defendant had an obligation to pay a certain sum as a general debt.

*RAE Assocs., Inc. v. Nexus Comm'ns, Inc.*, 2015-Ohio-2166, 36 N.E.3d 757, ¶ 31 (10th Dist. 2015) (emphasis added). Plaintiffs, as stated above, merely claim that Defendant overcharged them by a specific amount, $84,524.94. They do not identify a specific set of money, *e.g.*, particularly marked bills or proceeds from a particular wire transfer, that Defendant is unlawfully retaining. For these reasons, Claim Three must be dismissed.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. #32) is SUSTAINED. Judgment shall enter in favor of Defendant and against Plaintiffs.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

IT IS SO ORDERED.

February 9, 2024

*Walter H. Rice*
WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT